IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GS HOLISTIC, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DUKAAN ALHANJARI INC. D/B/A BERKELEY TOBACCO, ET AL.,<br><br>Defendants. | Case No. 23-cv-00749-CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DEFAULT JUDGMENT** |

Plaintiff GS Holistic, LLC (GS), the registered owner of Stündenglass trademarks, brings this suit against Defendants Dukaan Alhanjari Inc. d/b/a Berkeley Tobacco, Salah Khulaqi, and Mohsin Alriashi, alleging trademark infringement, counterfeiting, and false designation of origin and unfair competition under the Lanham Act (15 U.S.C. § 1051). See SAC (dkt. 37). The Clerk entered default as to all three Defendants after they failed to appear. See Clerk's Notice of Entry of Default (dkts. 43, 49). GS now moves for default judgment. See Mot. (dkt. 50). As explained below, the Court **GRANTS** the motion as to Defendants Salah Khulaqi and Mohsin Alriashi, with reduced damages, and **DENIES** the motion as to Defendant Dukaan Alhanjari Inc. because GS violated Rule 4(m) of the Federal Rules of Civil Procedure by failing to serve Defendant Dukaan Alhanjari Inc. within ninety days after filing its complaint. See Fed. R. Civ. P. 4(m).

I.  **BACKGROUND**

A.  **Factual Background**

When a defendant is in default, the factual allegations of the complaint are generally taken as true, except those relating to damages. Geddes v. United Fin. Grp., 559 F.2d 557, 560 (9th Cir. 1977). GS alleges the following.

Since 2020, GS has become widely recognized as a high-quality brand for glass infusers. SAC ¶¶ 8, 14, 18. GS distinguishes the Stündenglass brand by using high quality materials that facilitate "a superior smoking experience." Id. ¶ 9. GS markets and sells its products using the following Stündenglass trademarks:

> a. U.S Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration class 011. Id. ¶ 11.
>
> b. U.S Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034. Id.
>
> c. U.S Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034. Id.

The Stündenglass marks are distinctive to the consuming public and GS's trade. Id. ¶ 14. GS alleges that Defendants profited from and tarnished the GS brand reputation by selling inferior low-grade products with the Stündenglass trademark in their Berkeley store. Id. ¶¶ 22–23, 39. Specifically, GS alleges that on November 7, 2022, GS's investigator purchased a glass infuser with a Stündenglass trademark from Defendants' Berkeley store for $350.50, and a GS agent confirmed that the product was a counterfeit good. Id. ¶¶ 29–31. GS did not make or authorize the imitation product sold by Defendants. Id. ¶¶ 25–26. The actual price of the real product is $599.95. Folkerts Decl. (dkt. 50) ¶ 7. GS alleges that Defendants acted purposefully to deceive and confuse consumers by creating a false affiliation between Defendants, GS, and the Stündenglass

2

1  brand. SAC ¶¶ 37, 42, 49.

### B. Procedural Background

GS filed its initial complaint on February 19, 2023. Compl. (dkt. 1). On June 22, 2023, GS filed an amended complaint against Defendants Akram Alseeiadi d/b/a Berkeley Tobacco, Akram Alseeiadi, and Hani Abdulmalek Mutarreb. Amend. Compl. (dkt. 13). Defendants failed to appear, and the Clerk entered default as to Defendant Akram Alseeiadi d/b/a Berkeley Tobacco on September 12, 2023, and as to Defendants Akram Alseeiadi and Hani Abdulmalek Mutarreb on November 1, 2023. See Clerk's Initial Notices of Entry of Default (dkts. 19, 27). Subsequently, GS filed a motion for default judgment against Defendants. See Initial Mot. for Default (dkt. 29). On the date of the hearing, January 26, 2024, GS filed a motion to set aside the default against Defendants because GS discovered that it filed suit against the wrong parties. See Mot. to Set Aside (dkt. 32). The Court granted the motion on the same day. See Order (dkt. 34).

On January 29, 2024, the Court granted GS's motion for leave to file a second amended complaint (SAC) that included the correct parties. See Order Granting Leave (dkt. 36). GS filed its SAC on March 1, 2024, against current Defendants Dukaan Alhanjari Inc. d/b/a Berkeley Tobacco, Salah Khulaqi, and Mohsin Alriashi. See SAC. GS served Salah Khulaqi directly on May 5, 2024, substitute-served Mohsin Alriashi on April 24, 2024, and substitute-served Dukaan Alhanjari Inc. on September 12, 2024. See Summons (dkts. 45, 46, 47). Defendants failed to appear, and the Clerk entered default as to Defendants Salah Khulaqi and Mohsin Alriashi on September 27, 2024, and as to Defendant Dukaan Alhanjari Inc. on January 14, 2025. See Clerk's Notice of Entry of Default (dkts. 43, 49). On January 21, 2025, GS filed this motion for default judgment against Defendants. See Mot.

## II. LEGAL STANDARD

"[E]ntry of a default judgment is within the discretion of the court." Lau Ah Yew v. Dulles, 234 F.2d 415, 416 (9th Cir. 1956). Upon an entry of default by the Clerk, the factual allegations of the plaintiff's complaint will be taken as true, except those relating to

3

1  the amount of damages. See Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696,
2  702 (9th Cir. 2008). In determining whether to enter a default judgment, a court has "an
3  affirmative duty to look into its jurisdiction over both the subject matter and the parties,"
4  In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999), including whether notice has been adequately
5  given, see Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987); Fed.
6  R. Civ. P. 55(a).

7      Courts must also consider the "Eitel factors": (1) the possibility of prejudice to the
8  plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the
9  complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute
10 concerning material facts; (6) whether the default was due to excusable neglect; and (7) the
11 strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the
12 merits. Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

### III.   DISCUSSION

    This order addresses the issues in the following order: (A) service of process; (B) jurisdiction; (C) the Eitel factors; and (D) relief sought.

#### A.   Service of Process

"In deciding whether to grant or deny default judgment, the Court must first assess the adequacy of the service of process on the party against whom default is requested because, if service were improper, that may well explain the failure of a defendant to appear in a lawsuit." Folkmanis, Inc. v. Uptown Toys LLC, No. 18-cv-00955-EMC, 2018 WL 4361140, at *2 (N.D. Cal. Sept. 13, 2018) (internal quotation marks and citation omitted).

    Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, an individual defendant may be served by "delivering a copy of the summons and of the complaint to the individual personally." Fed. R. Civ. P. 4(e)(2)(A). Under Rule 4(h), a corporation may be served in the manner prescribed by Rule 4(e)(1) for serving an individual, which allows for service in accordance with state law. Id. 4(h), 4(e)(1). California law permits a corporation to be served by delivering a copy of the summons and complaint to the

4

1  "person designated as agent for service of process." Cal. Civ. Proc. Code § 416.10(a).
2  Rule 4(m) further requires that defendants be served within 90 days of when the operative
3  complaint is filed. Fed. R. Civ. P. 4(m). If service occurs outside of the 90-day window,
4  the Court must dismiss the action without prejudice, or order that service be made within a
5  specified time. Id.

6  GS adequately served Defendants Salah Khulaqi and Mohsin Alriashi. See
7  Summons (dkts. 45, 46). GS filed its SAC on March 1, 2024, and properly served
8  Defendant Salah Khulaqi 66 days after that, on May 5, 2024, and Defendant Mohsin
9  Alriashi 55 days after that, on April 24, 2024. See SAC; Summons. But GS did not serve
10 Defendant Dukaan Alhanjari Inc. until September 12, 2024—196 days after GS filed its
11 SAC. See Summons (dkt. 47). To be proper, service must take place within 90 days of
12 when the complaint is filed. See Fed. R. Civ. P. 4(m); see also GS Holistic, LLC v. Puff N
13 Go Gift Shop LLC, No. 5:22-cv-07634-EJD, 2023 WL 6933625, at *1 (N.D. Cal. Aug. 23,
14 2023) (denying motion for default judgment without prejudice in part for untimely
15 service). GS did not show good cause for its untimely service to Defendant Dukaan
16 Alhanjari Inc. Therefore, the motion is denied without prejudice as to Defendant Dukaan
17 Alhanjari Inc.

18 The remainder of the order determines whether default judgment is nonetheless
19 appropriate as to Defendants Salah Khulaqi and Mohsin Alriashi.

20  **B.  Jurisdiction**

21 Where, as here, a plaintiff seeks entry of default judgment against a party who has
22 failed to plead or otherwise defend, "a district court has an affirmative duty to look into its
23 jurisdiction over both the subject matter and the parties." In re Tuli, 172 F.3d at 712.

24 The Court has subject matter jurisdiction over this case because the claims relate to
25 trademark infringement, counterfeiting, and false designation of origin and unfair
26 competition. Pursuant to 28 U.S.C. § 1338, these matters fall under the jurisdiction of
27 federal courts. Moreover, the Court has personal jurisdiction over Defendants because the
28 complaint alleges that Defendant Dukaan Alhanjari Inc. is incorporated and has its

principal place of business in California, and Defendants Salah Khulaqi and Mohsin Alriashi reside in California and regularly conduct and solicit business in California. See SAC ¶ 3.

### C. Eitel Factors

Factors that courts consider when exercising discretion as to the entry of a default judgment include: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel, 782 F.2d at 1471–72.

#### 1. Possibility of Prejudice

"Under the first Eitel factor, the Court must examine whether [a plaintiff] will be prejudiced if the Court denies its request for entry of default judgment." IO Grp., Inc. v. Jordon, 708 F. Supp. 2d 989, 997 (N.D. Cal. 2010). This factor weighs in favor of default judgment "when a defendant has failed to appear or defend against a suit, and the plaintiffs could not otherwise seek relief." Vietnam Reform Party v. Viet Tan - Vietnam Reform Party, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (citations omitted). Defendants have not participated in this case. Thus, without default judgment, GS will be without recourse to stop Defendants' infringement or recover from Defendants' actions. Therefore, this factor weighs in favor of default judgment.

#### 2. Merits of the Claims and Sufficiency of the Complaint

The second and third Eitel factors address whether GS's claims are adequately pleaded and sufficient to find liability on the facts alleged. See Eitel, 782 F.2d at 1471. GS alleges trademark counterfeiting, infringement, and false designation of origin and unfair competition under the Lanham Act. See SAC ¶¶ 53–70. To establish a claim under the Lanham Act, a plaintiff must establish that the defendant, without consent, used a mark that is "confusingly similar to a valid, protectable trademark." Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp., 174 F.3d 1038, 1046 (9th Cir. 1999); 15 U.S.C § 1114(1)(a).

1    Federal registration of a trademark provides "prima facie evidence" that the mark is valid
2    and entitles a plaintiff to a strong presumption that the mark is protectable. Zobmondo
3    Ent., LLC v. Falls Media, LLC, 602 F.3d 1108, 1113 (9th Cir. 2010).
4        As the registered owner of three Stündenglass trademarks, GS is entitled to the
5    presumption that the mark at issue is protectable. See id. On November 7, 2022, GS's
6    investigator purchased a glass infuser from Defendants at their Berkeley store for $350.50.
7    SAC ¶¶ 29–30. The glass infuser had what appeared to be a Stündenglass mark affixed to
8    it. Id. Subsequently, a GS agent inspected the product for authenticity and determined that
9    it was not created by GS or with GS's consent. Id. ¶¶ 31, 33. This is sufficient to establish
10   that Defendants used GS's valid and protectable mark without consent. See GS Holistic,
11   LLC v. Awalom, No. 23-CV-00748-TSH, 2023 WL 7458853, at *4 (N.D. Cal. Oct. 6,
12   2023), report and recommendation adopted sub nom. GS Holistic, LLC v. Aman Awalom,
13   No. 23-CV-00748-CRB, 2023 WL 7458857 (N.D. Cal. Oct. 21, 2023) (same conclusion).
14       "Likelihood of confusion exists when consumers viewing the mark would probably
15   assume that the goods it represents are associated with the source of a different product
16   identified by a similar mark." KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,
17   408 F.3d 596, 608 (9th Cir. 2005). To determine whether the use of a mark creates the
18   likelihood of confusion, courts analyze the eight Sleekcraft factors. Good Meat Project v.
19   GOOD Meat, Inc., 716 F. Supp. 3d 783, 797 (N.D. Cal. 2024); Jada Toys, Inc. v. Mattel,
20   Inc., 518 F.3d 628, 632 (9th Cir. 2008). The Sleekcraft factors assess (i) the strength of the
21   protected mark; (ii) the proximity of the goods; (iii) the similarity of the marks; (iv)
22   evidence of actual confusion; (v) the similarity of the marketing channels used; (vi) the
23   type of goods and the degree of care likely to be exercised by consumers; (vii) the
24   defendant's intent in selecting its mark; and (viii) the likelihood of expansion into other
25   markets. AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979), abrogated
26   on other grounds by Mattel, Inc. v. Talking Mountain Prod., 353 F.3d 792 (9th Cir. 2003).
27       GS has met its burden in showing that Defendants' use of the Stündenglass mark is
28   likely to cause confusion. First, GS's mark is strong because it is "inherently distinctive,"

1    with details that are "arbitrary and fanciful," providing it the "widest ambit of protection
2    from infringing uses." See Sleekcraft, 599 F.2d at 349; Mot. Ex. 1. Although GS alleges
3    that its products are higher quality than those sold by Defendants, both products are glass
4    infusers with "identical" or "confusingly similar" marks. SAC ¶¶ 27, 37. Thus even if GS
5    sells its glass infusers at a higher price than Defendants do, the "general class" of
6    purchasers exposed to the products still overlap. See Sleekcraft, 599 F.2d at 353.
7    Furthermore, a likelihood of confusion may exist even where goods are relatively
8    expensive and buyers are expected to exercise greater care when making a purchase. Id.
9    Nor must GS provide evidence of actual confusion for this element to be met. See id.

10        Second, when the alleged infringer knowingly adopts a similar mark to another's,
11   courts may presume that the defendant intended to deceive the public. Id. at 354. The
12   Court can reasonably presume that Defendants adopted the mark with knowledge that it
13   belonged to GS because the mark used by Defendants is virtually identical to the well-
14   known mark registered by GS. See SAC Ex. 1–2. Accordingly, the Court may further
15   presume that Defendants intended to deceive the public. See Sleekcraft, 599 F.2d at 354.
16   Defendants have not appeared in order to argue otherwise. Lastly, because both parties
17   sell glass infusers, the parties already compete with each other. See id. at 354.

18        In sum, analysis of the Sleekcraft factors suggests that there is a likelihood of
19   confusion. See GS Holistic, LLC v. MSA-Bossy Inc., No. 22-CV-07638-JSC, 2023 WL
20   3604322, at *3 (N.D. Cal. May 22, 2023) (holding that a reasonably prudent consumer
21   would likely be confused as to the origin of the glass infuser sold by defendants). Under
22   the Lanham Act, the same likelihood-of-confusion test applies to claims for trademark
23   counterfeiting and infringement, and false designation of origin and unfair competition.
24   New W. Corp. v. NYM Co. of Cal., 595 F.2d 1194, 1202 (9th Cir. 1979). Therefore, GS
25   has sufficiently alleged plausible claims for relief.

26              **3.      The Sum of Money at Stake in the Action**
27        Default judgment is disfavored when the amount at stake is substantial or
28   unreasonable relative to the allegations in the complaint. See Eitel, 782 F.2d at 1472

(affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings). But "when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." Yelp Inc. v. Catron, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

GS requests $150,000 ($50,000 per mark) in statutory damages, which is within the range proscribed by Congress for trademark infringement. See 15 U.S.C. § 1117(c) (authorizing $1000–$200,000 per counterfeit mark, or up to $2,000,000 per counterfeit mark for willful violations). So, the amount at issue is tailored to the specific misconduct of Defendants, and this factor weighs in favor of default judgment.

#### 4. The Possibility of a Dispute Concerning Material Facts

The fifth Eitel factor requires the Court to consider the possibility of a dispute over material facts. Eitel, 782 F.2d at 1472. Because Defendants have not appeared and "all liability-related allegations are deemed true," there is little possibility of a dispute over material facts. See Strike 3 Holdings, LLC v. Andaya, No. 21-cv-00760-VKD, 2021 WL 5123643, at *5 (N.D. Cal. Nov. 4, 2021); see also Dr. JKL Ltd. V. HPC IT Educ. CTR., 749 F. Supp. 2d 1038, 1051 (N.D. Cal. 2010) (concluding that where the defendant failed to address any of the specific allegations in the complaint, the likelihood that any genuine issue may exist is, at best, remote).

#### 5. Whether Default was Due to Excusable Neglect

There is no indication in the record that Defendants' failure to appear or otherwise defend against the motion for default judgment is the result of excusable neglect. See Eitel, 782 F.2d at 1472. Aside from Defendant Dukaan Alhanjari Inc., whom GS untimely served, GS properly served Defendants. See Summons. Defendants Salah Khulaqi and Mohsin Alriashi's failure to appear suggests that they have chosen not to present a defense. Therefore, as to Defendants Salah Khulaqi and Mohsin Alriashi, this factor weighs in favor of default judgment.

#### 6. Policy Favoring Deciding a Case on its Merits

As a matter of policy, default judgments are generally disfavored because "[c]ases

should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. But "default judgment is appropriate when a defendant refuses to litigate a case." Bd. of Trustees v. Protech Servs., Inc., No. C 12-01047 MEJ, 2014 WL 122702, at *7 (N.D. Cal. Jan. 13, 2014); see also PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Defendant's failure to answer Plaintiffs' complaint makes a decision on the merits impractical, if not impossible."). The final Eitel factor thus does not preclude this Court from granting default judgment.

### 7. Conclusion

Based on the preceding analysis, the Eitel factors weigh in favor of granting default judgment against Defendants Salah Khulaqi and Mohsin Alriashi.

## D. Relief Sought

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Accordingly, courts require at least some proof of damages for relief to be granted in a default judgment. Geddes, 559 F.2d at 560. GS requests the following forms of relief: (1) statutory damages of $150,000 ($50,000 per mark); (2) attorneys' fees and costs; (3) post-judgment interest; (4) injunctive relief; and (5) destruction of infringing products. Mot. at 10–17.

### 1. Statutory Damages

In a case involving the use of a counterfeit mark, the Court may award statutory damages "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the [C]ourt considers just." 15 U.S.C. § 1117(c)(1). "[I]f the court finds that the use of the counterfeit mark was willful, [the Court may award] not more than $2,000,000 per counterfeit mark." Id. § 1117(c)(2). The Court has discretion to award statutory damages within the prescribed statutory range, so long as the award is sufficient to deter future trademark infringement. Playboy Enters., Inc. v. Baccarat Clothing Co., Inc., 692 F.2d 1272, 1274–75 (9th Cir. 1982).

To determine the appropriate amount of statutory damages to award, "courts in this

1  district have considered whether the amount of damages requested bears a plausible
2  relationship to Plaintiff's actual damages." Yelp Inc., 70 F. Supp. 3d at 1102 (citations
3  omitted).  "While a plaintiff in a trademark or copyright infringement suit is entitled to
4  damages that will serve as a deterrent, it is not entitled to a windfall."  Id.

5  GS seeks $150,000 in statutory damages—$50,000 for each of three registered
6  marks.  Mot. at 13.  GS alleges that Defendants infringed on Stündenglass trademarks with
7  the registered numbers 6,633,884, 6,174,292, and 6,174,291.  Id.  GS argues that $150,000
8  in statutory damages is justified because Defendants acted willfully when they sold to a GS
9  investigator a counterfeit product that was less than the retail value of the actual product
10 and inferior in quality.  Id. at 12; Folkerts Decl. ¶¶ 7, 15.  In addition to holding
11 Defendants accountable, GS seeks to send "an unequivocal message to the industry that
12 counterfeiting will not be tolerated."  Mot. at 13.

13 Defendants, however, cannot be held accountable for the infringing actions of
14 others in the industry.  Moreover, GS refers to infringement of three registered marks but
15 only alleges one sale, with one infringing Stündenglass mark, at the price of $350.50.  See
16 SAC ¶¶ 30–31 ("GS's investigator purchased a glass infuser with a Stündenglass Mark
17 affixed to it . . . inspection of the purchased item confirmed that [it] was a Counterfeit
18 Good with an Infringing Mark affixed to it.").  Furthermore, nothing suggests that
19 Defendants were producing or distributing counterfeit products on a significant scale.
20 Although Defendants' default contributes to GS's inability to use discovery to determine
21 exactly how many counterfeit products Defendants created and sold, the fact remains that
22 Defendants' responsibility for GS's business losses is largely unknown.

23 Accordingly, it is appropriate for the Court to award a total of $5,000 in statutory
24 damages.  See GS Holistic, LLC v. MSA-Bossy Inc., No. 22-CV-07638-JSC, 2023 WL
25 3604322, at *5 (N.D. Cal. May 22, 2023) (awarding $5,000 in statutory damages under
26 similar facts); GS Holistic, LLC v. Maharjan, No. 23-CV-00750-SVK, 2024 WL 1007422,
27 at *5 (N.D. Cal. Feb. 7, 2024) (same conclusion).  There is little evidence that Defendants
28 acted willfully, other than their default.  Additionally, there is little to suggest that

1  Defendants' specific infringement substantially impacted GS.  A statutory damages award
2  of $5,000 is above the statutory minimum and represents more than ten times the price of
3  the only sale at issue.  Therefore, it is sufficient to serve as a deterrent for future sales
4  without granting GS a windfall.

### 2. Attorneys' Fees and Costs

The Court "shall" award "the costs of the action" to a plaintiff who establishes a trademark violation.  15 U.S.C § 1117(a).  GS requests $1,812.50 in costs, composed of the filing fee ($402.00), the process server fee ($995.00), and investigation fees ($415.50).  Mot. at 14.  Filing and service of process expenses are reasonable and routinely awarded.  See, e.g., Facebook, Inc. v. Sahinturk, No. 20-CV-08153-JSC, 2022 WL 2239841, at *2 (N.D. Cal. June 17, 2022); 3M Co. v. G7 Env't, LLC, No. CV 20-8892, 2021 WL 2935659, at *10 (C.D. Cal. June 9, 2021).  Under 15 U.S.C. § 1117(a), the "cost of the action" is limited to costs incurred after the court case begins.  See Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 573 (2012) ("Because taxable costs are limited by statute and are modest in scope, we see no compelling reason to stretch the ordinary meaning of the cost items Congress authorized [from oral interpretation to document translation]."); Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc., 741 F.3d 955, 958 (9th Cir. 2013) (applying Taniguchi).

GS does not cite any authority for shifting the cost of pre-suit investigation to Defendants.  Accordingly, the Court will only award GS $1,397.00, for the cost of filing and service fees.

### 3. Post-Judgment Interest

Post-judgment interest is determined by federal law.  James B. Lansing Sound, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 801 F.2d 1560, 1570 (9th Cir. 1986).  Pursuant to 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  Post-judgment interest is given on the entire amount of the judgment, including damages and attorneys' fees.  See, e.g., Phillips 66 Co. v. Cal. Pride, Inc., No. 16-CV-01102-LJO-SKO, 2017 WL 2875736, at *12–13 (E.D. Cal.

July 6, 2017). Because post-judgment interest is not discretionary, the Court grants GS's request for post-judgment interest. GS may submit a specific request for post-judgment interest after judgment is entered.

### 4. Injunctive Relief

Courts "have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark." 15 U.S.C § 1116(a). Generally, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Century 21 Real Est. Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988). To obtain a permanent injunction, GS must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006); see also Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc., 736 F.3d 1239, 1249 (9th Cir. 2013) ("[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action."). The Lanham Act provides trademark holders "a rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a).

GS argues that all factors weigh in favor of granting a permanent injunction against Defendants. Mot. at 15–17. First, GS argues that it has demonstrated a likelihood of success on the merits of its claim and is therefore entitled to the presumption of irreparable harm. Id. at 15–16. Second, GS states that an award of statutory damages will not adequately address the Defendants' continued ability to infringe on its trademarks. Id. at 16. Third, GS contends that enjoining Defendants will not cause them undue hardship because they can obtain genuine Stündenglass brand products to sell at their store, whereas, failing to enjoin Defendants will cause GS's business reputation to be harmed. Id. Finally, GS asserts that granting injunctive relief will not disserve public interest

13

because it is in the public's interest to prevent counterfeit products from flooding the marketplace. Id. at 16–17.

GS asks the Court to permanently enjoin Defendant Dukaan Alhanjari Inc. d/b/a Berkeley Tobacco, and its agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concert or participation with it from:

> a. The import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment licensing, development, display, delivery, marketing, advertising, or promotion of the counterfeit Stündenglass products, meaning products bearing the Stündenglass trademarks (registration numbers 6,633,884; 6,174,292; and 6,174,291), counterfeit, copy, or colorful imitation thereof.

Id. at 17.

GS's request for injunctive relief is tailored to the unauthorized production and sale of the registered Stündenglass trademarks that were affixed to the counterfeit glass infuser that Defendants sold to GS's investigator. Additionally, GS has filed a declaration from Christopher Folkerts, the CEO of GS, establishing actual, irreparable harm from the loss of consumer good-will and brand reputation. See Decl. (dkt. 50-4) at 5. Nonetheless, GS is not entitled to relief from Defendant Dukaan Alhanjari Inc. because GS did not timely serve Defendant Dukaan Alhanjari Inc. See Summons. GS's request for injunctive relief is only as to Defendant Dukaan Alhanjari Inc. and does not name Defendants Salah Khulaqi or Mohsin Alriashi. See Mot. at 17. Accordingly, the Court denies GS's request for injunctive relief against Defendant Dukaan Alhanjari Inc.

### 5. Destruction of Infringing Products

Once a claim for trademark infringement has been established, 15 U.S.C. § 1118 gives the Court discretion to "order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the registered mark . . . be delivered up and destroyed." 15 U.S.C. § 1118. GS requests that the Court

order Defendants, at their cost, to "deliver to [GS] for destruction all products . . . in their possession or control bearing any of the Stündenglass Marks." Mot. at 17. But GS offers no argument or evidence in support of this request. See GS Holistic, LLC v. Ashes Plus Nine, No. 22-CV-07101-YGR (LJC), 2024 WL 2193362, at *6 (N.D. Cal. May 15, 2024) (holding that a request alone is insufficient to entitle GS to this type of relief); GS Holistic, LLC v. Pudasaini, No. 23-CV-00753-AMOL, 2024 WL 710890, at *7 (N.D. Cal. Feb. 21, 2024) (same conclusion). Therefore, the Court denies GS's request for this type of equitable relief.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion for default judgment as to Defendants Salah Khulaqi and Mohsin Alriashi, awarding statutory damages of $5,000 in total, costs amounting to $1,397, and post-judgment interest. The Court **DENIES** without prejudice the motion as to Defendant Dukaan Alhanjari Inc. d/b/a Berkeley Tobacco and as to requests for injunctive and equitable relief.

**IT IS SO ORDERED.**

Dated: April 2, 2025

CHARLES R. BREYER
United States District Judge